TAMBUR'S, INC., APPELLEE, *v.* HILTNER, APPELLANT.

[Cite as Tambur's, Inc., v. Hiltner (1977),
55 Ohio App. 2d 90.]

(No. L-76-258—Decided April 8, 1977.)

*Mr. Steven E. Simon,* for appellant.
*Mr. Robert B. Dixon,* for appellee.

CONNORS, J. This is an appeal from a judgment entered in the Municipal Court of Toledo overruling defendant's motion for new trial.

On May 5, 1975, defendant Elizabeth Hiltner contacted plaintiff Tambur's, Inc., by telephone, inviting plaintiff's representative to her residence for the purpose of

submitting a home repair and remodeling estimate. Plaintiff's estimate and that of another contractor, were submitted on May 8, 1975. Four days later, and after defendant signed a document prepared by plaintiff, repair and remodeling work was begun on her home. This work was completed on May 28, 1975.

Plaintiff filed suit in Toledo Municipal Court on November 7, 1975, for payment of materials and labor costs totalling $6,000. On November 26, 1975, defendant mailed plaintiff a notice "cancelling the transactions," then filed an answer and counter-claim alleging violations of R C. 1345.21, *et seq.*, the Home Solicitation Sales Act.

At the conclusion of a trial commenced on July 7, 1976, the lower court found plaintiff in violation of the act, but utilized a theory of unjust enrichment in entering a judgment for plaintiff in the sum of $4,800.

Defendant's motion for new trial, filed July 13, 1976, was overruled. From that adverse judgment, defendant now appeals.

Defendant presents one assignment of error, to wit:

"I. The trial court erred in finding that, although O. R. C. Sec. 1345.21 *et seq.* (the Ohio Home Solicitation Sales Act) applied and that appellant was not given the requisite notifications of her right to cancel the transaction with appellee pursuant to O. R. C. Sec. 1345.23(B), she could not actually cancel the contract later than the third day after its effective date despite O. R. C. Sec. 1345.23(C). The court also erred in holding that if she could cancel the transaction and retain the goods and services without the duty to pay for them, it would result in unjust enrichment, and could thus not be permitted, despite the provisions of O. R. C. Sec. 1345.27."

We agree with defendant's contention that the trial court should apply all provisions of a statute if it finds that statute applicable to the case at hand. See 50 Ohio Jurisprudence 2d 214, Statutes, Section 233.

However, pursuant to App. R. 12(A), we choose to frame the issue before us somewhat differently:

Does a home improvement estimate, requested by a consumer and submitted by a contractor during an invited

visit to that consumer's home, constitute an element of negotiation within the meaning of O. R. C. Sec. 1345.21(A)(4)?

R. C. 1345.21 provides, in part:

"(A) 'Home solicitation sale' means a sale of consumer goods or services in which the seller or a person acting for him engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for him, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. It does not include a transaction or transactions in which: * * * (4) The buyer initates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale;

"Advertisements by such a seller in newspapers, magazines, catalogues, radio, or television do not constitute the seller initiation of the contact."

The term "negotiation" has been defined by many courts in the context of real estate and stock transactions. See *King* v. *Dean* (1968), 15 Ohio App. 2d 15; 28 Words and Phrases, Negotiation, page 768 *et seq*. However, the fact situation most closely approximating that before us is found in *United States* v. *McShain* (D. C. Cir. 1958), 258 F. 2d 422, certiorari denied, 358 U. S. 832. There, the Court of Appeals used this language, at page 424:

"Negotiation is a process of submission and consideration of offers until an acceptable offer is made, and accepted, or until it becomes apparent that no acceptable offer will be made. The brevity or the length of the haggling does not remove it from the definition of negotiation. If the first offer is accepted, the negotiation is concluded and a contract is made, just as it would be if the fifth or the fiftieth offer had been the accepted one."

In the instant action, plaintiff's home repair estimate was submitted pursuant to defendant's solicitation. It was

an offer to complete a particular job for an estimated price, and established a basis or starting point for any subsequent bargaining or consideration. In short, plaintiff's estimate was an essential element in the negotiating process.

Thus, we conclude that R C. 1345.21(A)(4) excludes this transaction from the protection of the Home Solicitation Sales Act, in that defendant initiated contact between the parties and plaintiff's estimate was an element of the purchase negotiation.

That the Home Solicitation Sales Act was designed to discourage high pressure, door-to-door salesmanship is well-recognized by this court. However, that this statute was not meant to protect against such transactions as that presently before us is equally clear. The defendant herein was not the victim of a fast-talking, door-to-door vendor who pushed his way into her home and pressured here into "signing on the dotted line." To the contrary, this defendant actively sought out plaintiff, by phone, inviting its representative into her home to submit an improvement estimate. Only after receiving an estimate from a second contractor, did she sign a document prepared by plaintiff. And, during the two to three weeks period when plaintiff was engaged in extensive repair and remodeling work on her home, defendant made (it appears) a less than strenuous effort to terminate the activity. It hardly appears that defendant was an unwary victim.

Thus, we hold that a home improvement estimate, requested by a consumer and submitted by a contractor during an invited visit to that consumer's home, constitutes an element of negotiation within the meaning of R. C. 1345.21 (A) (4).

Further, we do not believe that aluminum siding is "consumer goods," as defined in R. C. 1345.21(E):

" 'Consumer goods or services' means goods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses or instruction or training regardless of the purpose for which they are taken."

Siding is not purchased primarily for personal, family

or household purposes. It is a building material which, like a new roof or window sash, becomes part of the realty (a fixture).

Thus, we hold that the definition of "consumer goods" in R. C 1345.21(E) does not include aluminum siding which becomes part of the realty.

Finally, an examination of the language in R. C. 1345.23 (B)(2) and 1345.27 leads us to conclude that aluminum siding attached to a structure is not covered by The Home Solicitation Sales Act. R. C. 1345.23(B)(2) provides, *inter alia*:

"* * * [I]f you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may if you wish comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

"If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of the notice of cancellation, you may retain or dispose of the goods without any further obligation. * * *"

And, in R. C. 1345.27, we find this provision:

"* * * [W]ithin a reasonable time after a home solicitation sale has been cancelled * * *, the buyer upon demand must make available to the seller any goods delivered by the seller pursuant to the sale. The goods made available shall not have been diminished in quantity nor subjected to unreasonable wear or use. * * * If the buyer does make the goods available to the seller and the seller fails to pick them up within twenty days of the buyer's notice of cancellation the goods become the property of the buyer without obligation to pay for them. * * * "

It is self-evident that aluminum siding, cut to fit the contours of a structure and attached to that structure with nails, screws, etc., cannot be returned to the seller in substantially the same condition as when received. Its value will, of course, be significantly diminished.

The Ohio legislature cannot be presumed to have intended so awkward an application of the Act. Had it wish-

ed to include aluminum siding within the definition of "consumer goods," the legislature could easily have done so. In the alternative, it could have followed the example of New Jersey, which has enacted separate statutes covering door-to-door solicitation of home repair contracts (N. J. S. A. 17:16C-95 *et seq.*) and door-to-door solicitation of retail installment sales contracts (N. J. S. A. 17:16C-61.1 *et seq.*).

We hold that the sale of aluminum siding is not controlled by R. C 1345.21 *et seq.*, since, contrary to the provisions of R. C. 1345.23(B)(2) and 1345.27, it cannot be returned to the seller in substantially the same condition as when received and suffers a diminution in value at the time of installation.

For the foregoing reasons, the trial court erred in applying R. C. 1345.21 *et seq.* to this transaction, but did not err in awarding plaintiff $4,800 under a theory of unjust enrichment. The court's error was harmless. Since plaintiff filed no cross-appeal challenging the adequacy of the judgment in its favor, it cannot now question that amount.

Defendant's sole assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Toledo Municipal Court is affirmed.

*Judgment affirmed.*

POTTER, P. J., and BROWN, J., concur.