OPINION
{¶ 1} Defendant-Appellant, Yamaha Motor Corporation ("Yamaha"), appeals a judgment of the Logan County Common Pleas Court, finding that Yamaha breached the implied warranty of fitness for purpose. Yamaha claims that the trial court wrongfully dismissed its motions for summary judgment and directed verdict. Yamaha also maintains that the trial court erred by finding that Yamaha breached the implied warranty of fitness for a particular purpose. Having reviewed the entire record, we find that the trial court did not err in its judgment. Accordingly, we overrule all three of Yamaha's assignments of error and affirm the decision of the trial court.
 {¶ 2} In August of 2000, Plaintiff-Appellee, Richard Bolt, purchased a brand new Yamaha XR 1800 sport boat from JJ Sales and Service ("JJ"). JJ is an authorized Yamaha dealership located in Port Clinton, Ohio. With the purchase of the boat, Bolt received an express written warranty from Yamaha. The warranty covered the hull and deck for a period of five years and all other components for a period of one year.
 {¶ 3} Bolt bought the boat at the end of the 2000 boating season and only had one chance to use it that year. Bolt testified that the boat was hard to start, but attributed the hard start to the fact that the boat was brand new. After the initial test drive, Bolt stored the boat in a heated enclosure for the winter season.
 {¶ 4} In May of 2001, the beginning of the next boating season, Bolt brought the boat out of storage and docked it in lake Erie near his condominium in Catawba, Ohio. Bolt immediately began to experience more problems with the boat. The boat was hard to start and the engines stalled out on several occasions. Numerous witnesses testified to the fact that Bolt's boat was hard to start and would stall out for seemingly inexplicable reasons.
 {¶ 5} Because of the problems he was experiencing with the boat, Bolt contacted JJ's service department. Several times during the summer of 2001 he took the boat into JJ to have it serviced, and twice a JJ employee came out to the lake to look at the boat. JJ reported that they were unable to diagnose any problem with the boat and never conducted any repairs on it. After each time Bolt took the boat to JJ for service, it still experienced the same starting and stalling problems. Bolt also contacted a Yamaha sales representative and voiced his concerns over the poor performance of the boat. The sales representative assured Bolt that JJ could fix his problem.
 {¶ 6} After months of experiencing the same problems with the boat and JJ's seeming inability to resolve the problem, Bolt initiated the present law suit seeking to rescind his contract to purchase the boat. In response to the suit, Yamaha offered to perform a service check of the boat, which Bolt refused. Yamaha also had one of its own mechanics check the boat, but he was unable to find any defects. However, the boat did stall out on Yamaha's mechanic during his test drive.
 {¶ 7} In a pretrial motion, Yamaha requested that the case be dismissed on summary judgment, but the motion was denied by the trial court. At trial, Bolt produced himself and several other witnesses with extensive personal boating knowledge. Each witness testified that the boat was experiencing repeated starting and stalling problems. Yamaha moved for a directed verdict at the end of Bolt's case-in-chief, but the trial court denied this motion as well. During its case-in-chief, Yamaha produced two witnesses with mechanical backgrounds who had personally inspected Bolt's boat and who testified that they could find no defect with the boat. Further, each of Yamaha's witnesses testified that there were reasons other than mechanical failure that the boat may have been hard to start or stalled out.
 {¶ 8} By a preponderance of the evidence, the trial court found that Yamaha had breached the implied warranty of fitness for purpose and ordered rescission of the contract. It is from this decision that Yamaha appeals, presenting the following three assignments of error for our review.
 I The trial court erroneously concluded that Defendant-AppellantYamaha Motor Corp., U.S.A. breached the implied warranty offitness for a particular purpose.
 II The trial court erred by denying Yamaha's Motion for aDirected Verdict.
 III The trial court erred by denying Yamaha's Motion for a SummaryJudgment.
 {¶ 9} In the first assignment of error, Yamaha maintains that the trial court erroneously found it had breached the implied warranty of fitness for a particular purpose. Specifically, Yamaha claims that the evidence was insufficient to prove that an implied warranty of fitness for a particular purpose was ever created or breached.
 {¶ 10} Yamaha's entire first assignment of error is based upon a flawed reading of the trial court's judgment entry. They claim that the trial court's judgment was based on a finding that Yamaha had breached the implied warranty of fitness for a particular purpose. However, the exact language the trial court uses in its judgment entry is, "[b]y a preponderance of the evidence, the Court finds that the product in question breached the implied warranty of fitness for purpose." Noticeably absent from this language is the word "particular."
 {¶ 11} The Ohio Revised Code sets forth the implied warranty of merchantability in R.C. 1302.27 and the implied warranty of fitness for a particular purpose in R.C. 1302.28. The implied warranty of merchantability arises automatically in a contract for the sale of goods if the seller is a merchant with respect to goods of that kind. R.C. 1302.27(A). In contrast, an implied warranty of fitness for a particular purpose only arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." R.C. 1302.28. According to the official comments, "[a] `particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." R.C.1302.28, Official Comment 2.
 {¶ 12} Yamaha is correct in its assertion that there was no evidence presented at trial that Bolt ever intended to use the boat for anything outside the ordinary purpose for which recreational boats are bought. Therefore, if the trial court had based its judgment on a finding that Yamaha had breached the implied warranty of fitness for a particular purpose, it would have been in error. However, Yamaha's assertion that the trial court's judgment was based upon a breach of the implied warranty of fitness for a particular purpose is incorrect.
 {¶ 13} In order for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used." R.C. 1302.27(B)(3). By using the term implied warranty of fitness for purpose, the trial court was referencing the above concept of merchantability. The trial court specifically stated in its judgment entry that "the product is not fit for its intendedpurpose if the motor regularly stalls while in use." In view of the explicit language of the trial court, Yamaha's claim that the trial court's judgment was based on the implied warranty of fitness for a particular purpose is misplaced. Accordingly, we overrule Yamaha's first assignment of error.
 {¶ 14} In the second and third assignments of error, Yamaha contends that the trial court erred by dismissing its motions for summary judgment and directed verdict. In both assignments of error, Yamaha claims there was no evidence showing that the boat had any defects or that Bolt had given Yamaha a reasonable number of repair attempts.
 {¶ 15} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 16} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens City Clerk of Courts (1998),83 Ohio St.3d 523, 524; see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 {¶ 17} The trial court herein based its judgment on the fact that Yamaha had breached the implied warranty of merchantability. To prove a breach of the implied warranty of merchantability, Bolt had the burden of proving that the boat "was not fit for the ordinary purpose for which it was to be used." Sharkus v.Daimler Chrysler Corp., 8th Dist. No. 79218, 2002-Ohio-5559, at ¶ 21; see, also, Miller v. Daimler Chrysler Motors Corp.
(May 31, 2001), 8th Dist. No. 78300, 2001 WL 587496, unreported, *5.
 {¶ 18} After reviewing the entire record and construing the evidence most strongly in the favor of Bolt, we can not say that the trial court erred in dismissing Yamaha's motion for summary judgment. Bolt produced the affidavits of four witnesses who testified that the boat was hard to start and would consistently stall out. While Yamaha did produce evidence, by way of sworn affidavits, that there was no detectable defect in the boat, at most Yamaha established that there was a genuine issue of material fact that required a trial. Accordingly, Yamaha's third assignment of error is overruled.
 {¶ 19} "The test for a motion for a directed verdict under Civ.R. 50 is whether after construing the evidence most strongly in favor of the party against whom the motion is made, the court finds that upon any determinative issue, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Hildreth Mfg., L.L.C. v.Semco, Inc., 151 Ohio App.3d 693, 2003-Ohio-741, at ¶ 63, quoting Bank One, Dayton, N.A. v. Doughman (1988),59 Ohio App.3d 60, 62, quoting Jones v. Dolle (Aug. 2, 1978), 1st
Dist. No. C-77357, unreported. In cases tried to the bench, the trial court is permitted to weigh the evidence and rule thereon. Hildreth Mfg., at ¶ 63, citing Wallbrown v. Kent State Univ. (2001), 143 Ohio App.3d 762, 767.
 {¶ 20} At trial, Bolt and three other witnesses with extensive boating knowledge, testified that the boat was consistently hard to start and would stall out at unexpected times. The witnesses also testified that the boat could not be used for water skiing or tubing because of the danger that the boat would stall out. Each witness testified that Bolt operated the boat in an acceptable manner and did nothing out of the ordinary which would cause the engines to stall out. All of Yamaha's witnesses testified that they did not think Bolt was lying about the engine being hard to start or stalling out. Furthermore, the boat even stalled out on Yamaha's own mechanical expert when he took it out for a test drive. Bolt also produced evidence of repeated attempts to have the boat serviced. He also testified to seeing a JJ service employee working on the boat's carburetors. A JJ employee testified that he had adjusted the RPMs on one of the engines when he went out to Bolt's home to service the boat.
 {¶ 21} The trial court found that Bolt had produced enough evidence to form a prima facia case. Having reviewed the record, we can not say that the trial court erred in making such a determination. Bolt produced sufficient competent credible evidence to show that the boat was not fit for the ordinary purpose for which it was designed. See, C.E. Morris Co. v. FoleyConstr. (1978), 54 Ohio St.2d 279, 280-281. Therefore, Yamaha's second assignment of error is overruled.
 {¶ 22} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Cupp and Bryant, JJ., concur.